**W. Terry Scannell**, OSB No. 853220
Email: terry@scannellaw.com
7128 SW Gonzaga St. #220
Portland, Oregon  97223
Telephone:  (503) 776-0806
*Attorney for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **QILIANG (aka MEREDITH) YE** and **JIN ZHOU**, individuals, | Civil No. 3:17-cv-00902 |
| Plaintiffs, | **COMPLAINT** |
| v. | 1.  Equal Opportunity Credit Act |
| , | 2.  Violation of the Federal Fair Housing Act |
| **JPMORGAN CHASE BANK, N.A.**, **JOHN DOES 1 – 3,** | 3.  Violation Of The Oregon Unlawful Trade Practices Act |
| Defendants. | **JURY TRIAL REQUESTED** |

**Plaintiff  alleges as follows:**

**I. JURISDICTION AND VENUE**

A.    Jurisdiction

This Court has original jurisdiction pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court in a civil action under federal law, based upon diversity, pursuant to , 28 U.S.C. § 1332(a)(2) because the action involves a controversy between the citizens of a State and citizens or subjects of a foreign state, and the amount in controversy exceeds $75,000.00 exclusive of interests and costs. Jurisdiction is also based on Federal question jurisdiction

PAGE 1    COMPLAINT

pursuant to Equal Credit Opportunity Act (ECOA) (15 U.S.C.A. §§ 1691 et seq) as well as the Equal Housing Act.  The state law claims which are a part of this Complaint are subject to this Court's supplemental jurisdiction pursuant to 28 U.S.C.A. § 1367.

B.    Venue

Venue is proper, pursuant to 28 U.S.C. § 1391(b), because the real property that is the subject of this action is located in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because the Defendant conducts substantial business in this district, has sufficient minimum contacts with the District, and otherwise purposely avails itself of the markets in this District though the promotion, sale, and marketing of their products and services in this District.

## II.    FACTS COMMON TO ALL CLAIMS

A.    Parties

1.

The Plaintiffs are citizen of the People's Republic of China but are also permanent residents of the United States and the State of Oregon.  They are both in the country legally.

2.

JPMorgan Chase Bank, N.A., ("The Bank") is a national association formed under the laws of the United States with its principal place of business in New York. For the purposes of diversity jurisdiction, The Bank is a citizen of the State of New York.

B.    General Factual Allegations

3.

Meredith and her co-Plaintiff are daughter and mother.

//

//

//

PAGE 2    COMPLAINT

4.

Meredith first came to the United States in 2007 to attend high school in Southern California.

5.

In approximately 2010, Meredith was accepted at the University of Illinois in its finance program.

6.

In 2012, Meredith first established a banking relationship with The Bank. At that time, she was assigned a private banker.  The name of this banker is Lana Beraidi and, on information and belief, Ms. Beraidi still works for The Bank in Illinois.

7.

Meredith graduated from the University of Illinois in 2013 with a degree in finance. In 2015 Meredith earned a master's degree in finance as well.

8.

Between 2007 and 2017, Meredith's mother would visit her daughter in the United States.

9.

In 2009, Meredith and her mother decided that they wished to become United States citizens and started on a path to citizenship in that year.

10.

In 2015, Meredith accepted a position in finance with an Oregon technology company and moved to Oregon.  Her mother continued to make periodic visits to the United States and to Oregon.

//

//

PAGE 3     COMPLAINT

**Terry Scannell**
Attorney at Law
7128 SW Gonzaga Suite 220
Portland, Oregon  97223
Telephone:  (503) 776-0806

11.

In June of 2016, Meredith located a home in the Portland area she wished to buy with her family's help.  That house is a dwelling under the Fair Housing Act, the Equal Credit Opportunity Act and the Oregon's Fair Housing Act.

12.

In 2012, The Bank established an account for Meredith.

13.

Between June of 2016 and July of 2016, this account held approximately $650,000 in cash which was transferred to a brokerage account.

14.

Between July of 2015 and her applying for the loan in question, Meredith and her mother also held other accounts with The Bank which totaled almost $1.2 million.

15.

In anticipation of buying the house she found, Meredith contacted her private banker and asked if she and her mother could use the proceeds of the accounts as collateral for a loan to buy the house.

16.

The Bank knew and understood that the proceeds of the loan were going to be used to purchase a home for Meredith which was to be used for her own use and enjoyment.

17.

Meredith was told by The Bank it would "not be a problem" to obtain such a loan, or words to that effect.  Meredith was also told that it would take approximately "one week" to prepare the paper work for the loan and not more than three weeks for the cash to be ready.

PAGE 4    COMPLAINT

18.

Meredith entered into an agreement to purchase the house on or about June 19, 2016 based on the assurance of her banker.

19.

After 3 weeks the loan had not been approved.

20.

At that point she contacted Ms. Beraidi from The Bank and was told that her mother's signature had been rejected on the loan documents because it looked like the mother had "printed" her signature.

21.

Meredith then worked with her mother and her mother wrote out her name in English characters and that was then submitted to The Bank for approval.  The Plaintiffs also offered to come to the bank and have an officer of the bank watch as Meredith's mother signed the loan documents.

22.

Ms. Beraidi then contacted Meredith and asked to speak to her mother.  Meredith said, "of course" but then pointed out that her mother only speaks Chinese.  Meredith offered to work with The Bank to find a suitable and independent interpreter but this offer was not acceptable to the Bank either.

23.

On July 14, 2016, Meredith was contacted by Ms. Beraidi from The Bank by phone.

24.

During the course of this call Ms. Beraidi told Meredith on behalf of The Bank that she could not get the loan using the collateral in her account.  She was told that "these loans are only available for people who speak English." Meredith was also informed that someone else would

PAGE 5    COMPLAINT

call her from the Bank as well.  On Monday July 18, 2016 a man named Chris called and provided the Plaintiffs with a "formal rejection" of their loan application.  Chris also said that the type of loan the Plaintiffs had applied for were for "English speaking people" or words to that effect.

25.

Meredith was shocked and embarrassed by this.

26.

Meredith's mother, who Meredith had to tell, was also shocked and embarrassed by this.

27.

In order to close on the house, Meredith and her mother were forced to liquidate a portfolio of stock and use those proceeds to buy the home.  The sale of this stock generated a commission to The Bank in an amount currently unknown to the Plaintiffs.

28.

The stocks that were sold generated a steady income in the form of a dividend stream each quarter.  As a result of having had to sell the shares, the Plaintiffs have been damaged in an amount of approximately $268,450.00 over the life of the loan.  This calculation also factors in the interest that would have been paid on the loan or is "net" after interest payments.

29.

The requirement that the stock be sold also has and will result in the Plaintiffs losing other business opportunities.  These damages are continuing and ongoing and the damages are in an amount of approximately $25,000.00.

30.

The Plaintiffs have also suffered physical and emotional damages in the amount of approximately $400,000.00.

//

PAGE 6    COMPLAINT

31.

The Plaintiffs also seek exemplary damages in the amount of $5.040 million dollars.

32.

The Plaintiffs have also been required to hire a lawyer to bring this action and those fees are continuing to accrue.

### III. CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

### Violation of Equal Credit Opportunity Act (15 U.S.C.A. §§ 1691 et seq.)

33.

The Plaintiffs reallege and incorporate by reference the allegations in paragraphs 1 – 32, as if fully set forth herein.

34.

Meredith and her mother waited for more than 30 days to see if The Bank was going to provide them with a Notice of Adverse Credit Action which would explain in writing the reason(s) they were denied credit.

35.

An "Adverse Action" is a refusal to grant credit in substantially the amount or on substantially the terms requested in an application unless the creditor makes a counteroffer (to grant credit in a different amount or on other terms) and the applicant uses or expressly accepts the credit offered.  12 C.F.R. § 202.2

36.

The Bank did not provide any written notice or adverse action notice to the Plaintiffs.

37.

The Bank's statement through its employee/agent that only English speakers could be given these types of loans is discriminatory on its face.

PAGE 7    COMPLAINT

38.

Such a statement is also a direct violation of 12 C.F.R. 202.6 which prohibits The Bank from considering the "race", "color", or "national origin" of the borrower.

39.

The Plaintiffs were qualified for the loan but were denied it for the discriminatory reasons set forth in this Complaint.

40.

The Plaintiffs are members of a protected class.

41.

In the event that the Bank takes the position that such a "policy" is neutral on its face, the Plaintiffs allege the "policy" has a discriminatory impact.  Although evidence of discriminatory intent is not necessary to establish that a lender's adoption or implementation of a policy or practice that has a disparate impact is in violation of the Equal Credit Opportunity Act (15 U.S.C.A. §§ 1691 et seq.) and ECOA Regulation B (12 C.F.R. § 202), plaintiff alleges that the Bank's wanton indifference to plaintiff's federally protected rights constitutes intent, and therefore, plaintiff is entitled to exemplary damages.

42.

The Bank continued to approve loans for similarly situated applicants who were not in the protected class.

//

//

//

PAGE 8    COMPLAINT

## SECOND CAUSE OF ACTION

### Violation of Fair Housing Act (42 U.S.C.A. § 3604)

43.

The Plaintiffs reallege and incorporates by reference the allegations in paragraphs 1 to 42 as if fully set forth herein.

44.

A loan for a house is a service in connection with housing within the meaning of the Fair Housing Act, 42 U.S.C. § 3604(f)(2).

45.

As providers of loans to be used for the purchase of real estate, Defendant is subject to the Fair Housing Act and State fair housing laws.

Defendants and their agents engaged in the following discriminatory housing practices:

a. Distinguishing in the price, terms, conditions, and privileges in the provision of services in connection with a dwelling;

b. Making oral statements to the Plaintiff that only English speakers could apply and get the loan in question and otherwise indicating an unlawful preference, limitation, specification, or discrimination against an individual due to their race and national origin.

c. Refusing to provide a home loan because of the Plaintiffs race and national origin

d. Attempting to discourage the purchase of real property by refusing to provide services in connection with housing because of the race and national origin of the Plaintiffs

PAGE 9    COMPLAINT

e.  Attempting to make unavailable or denying a dwelling by failing to provide services in connection with housing because of the Plaintiffs race and national origin or ability.

46.

The discriminatory actions of the Defendant were intentional, willful and taken in disregard for the rights of the Plaintiffs.

47.

The Plaintiffs are entitled to equitable relief and compensatory damages in an amount to be determined at trial, as well as attorney fees and litigation costs pursuant to 42 U.S.C. §§ 3612(p) and 3613(c).

48.

The Plaintiffs are entitled to punitive damages pursuant to 42 U.S.C. §§ 3612(o)(3) and 3613(c).

**THIRD CAUSE OF ACTION**

**Violation of Oregon's Fair Housing Act (ORS 659A.145 )**

49.

The Plaintiffs reallege and incorporate by reference the allegations in paragraphs 1  to 48 as if fully set forth herein.

50.

A loan for a house is a service in connection with housing within the meaning of the Oregon Fair Housing Act, ORS 659A.145(2)(c).

//

PAGE 10    COMPLAINT

51.

The Bank violated Oregon's prohibitions on unlawful discrimination in real estate transactions, ORS 659A.421, in that it:

a. made a distinction, discrimination, or restriction against the Plaintiffs in the terms, conditions or privileges relating to the sale, rental, lease, or occupancy of real property or in the furnishing of services in connection therewith;

b. Attempted to discourage the sale, rental or lease of any real property to a purchaser.

52.

The Plaintiffs have suffered damages as a result of Defendants' discriminatory conduct, and, as such, are an aggrieved person, as defined in ORS 659A.885(10)(a).

53.

The discriminatory actions of Defendants were intentional, willful and taken in disregard for the rights of the Plaintiffs.

54.

The Plaintiffs are entitled to equitable relief and compensatory damages in an amount to be determined at trial pursuant to ORS 659A.885, including attorney fees and litigation costs pursuant to ORS 659A.885(9).

55.

The Plaintiffs are also entitled to punitive damages pursuant to ORS 659A.885.

//

//

//

PAGE 11   COMPLAINT

**Terry Scannell**
Attorney at Law
7128 SW Gonzaga Suite 220
Portland, Oregon  97223
Telephone:  (503) 776-0806

## IV. PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for entry of judgment against defendants and that requests the

following relief:

1. On all Plaintiffs claims, for all compensatory damages, including but not limited to, the

amount of $693,450.00

2. On all the Plaintiffs claims exemplary damages in the amount of $5,000,000.00.

3. All costs of suit and attorney's fees herein pursuant to the relevant statutes.

4. And such other relief as the court may deem just and proper be awarded to plaintiff.


## JURY TRIAL REQUESTED



DATED: June 8, 2017



/s/ Terry Scannell
Terry Scannell, OSB #853220
7128 SW Gonzaga Street, Suite 220
Portland, OR 97223
Telephone: (503) 776-0806
Email:  terry@scannellaw.com
*Attorney for Plaintiffs*



PAGE 12    COMPLAINT